TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00175-CR






James Ronald Gorman, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT


NO. 8492, HONORABLE CHARLES J. HEARN, JUDGE PRESIDING







M E M O R A N D U M O P I N I O N



 Appellant James Ronald Gorman appeals his conviction for possession of cocaine in
an amount of four grams or more but less than 200 grams with intent to deliver. (1) The jury found
appellant guilty. In assessing punishment, the jury found that the allegations of the enhancement
paragraph of the indictment alleging a prior robbery conviction were true, and fixed appellant's
punishment at twenty years' imprisonment, and a fine of $2,500.


Points of Error

 Appellant advances six points of error. The first three points relate to evidentiary
rulings. Appellant contends that the trial court (1) erred in admitting extraneous offenses, (2) erred
in admitting a probable cause affidavit for an arrest warrant, and (3) erred in admitting irrelevant,
bolstering and prejudicial matters. In the last three points, appellant (4) claims that the trial court
erred in denying a motion for an instructed verdict because the informant was "untrustworthy as a
matter of law," (5) challenges the sufficiency of the evidence to sustain the conviction, and (6) urges
error in the jury charge on punishment by inclusion of the enhancement paragraph of the indictment
therein. We will affirm the conviction.


Background

 At the trial on January 2, 2002, Narcotic Agent/Sergeant Bruce Morgan of the 33rd
Judicial District Narcotics Enforcement Team testified as to his activities on the evening of
September 12, 1997, in Burnet County. On that evening, Morgan and a confidential informer, Adrian
Slough, planned a "buy-bust" or "sting" operation. Sgt. Morgan explained that it was difficult to lure
dealers out of Austin into Burnet County, a part of the 33rd Judicial District, unless the "deal" was
worth their while. As a case agent, Morgan authorized Adrian to set up a deal for the purchase of two
ounces of cocaine for $2,000. Morgan had worked with Adrian before and considered him "credible
as far as what they tell us." (2) According to Morgan, Adrian telephoned Jeff Spohn in Austin earlier
in the evening of September 12, 1997, in order to arrange for a sale of cocaine. Morgan did not know
Spohn or recognize Spohn's voice but Morgan placed his ear near the phone to hear the conversation. 
Acting in accordance with Morgan's instructions, Adrian had Spohn agree to meet him about 9:00
p.m. in a rural area of Burnet County at a parking lot at Hollingsworth Corner, where there was a store
and gas station. Spohn stated that he would be with his "roommate" or his "roommate Gorman," that
they would have guns, and that the "police had better not be there."

 Morgan testified that he searched Adrian and the car that Adrian would be driving to
determine that he had no cocaine on his person or in his vehicle. (3) Officer Manuel Duarte was
assigned to accompany Morgan to Hollingsworth Corner. Duarte testified that he did not search
Adrian or his vehicle or see anyone conduct such a search prior to leaving the Narcotics Enforcement
Team office in Marble Falls.

 Morgan revealed that he and Duarte followed Adrian to Hollingsworth Corner. It was
after 9:00 p.m. The "suspects" had already arrived on the parking lot and "were outside their
vehicle"--a tan pickup truck which met the description earlier given by Spohn over the telephone. 
The officers were in an interdiction vehicle, a "black Crown Vic." They drove past the store so as
not to attract attention. Morgan reported that Duarte stated he saw Adrian getting into the suspect's
truck. The officers turned around and approached the parking lot. Morgan saw Adrian raising the
trunk of Adrian's vehicle. This was the prearranged signal that Adrian had seen the cocaine and
would give the appearance that he was obtaining the purchase money. (4)

 At Adrian's signal, Morgan drove the interdiction car onto the parking lot and placed
it "nose to nose" with the tan pickup truck. Morgan jumped out to arrest the truck passenger, later
identified as appellant Gorman. Duarte moved to arrest Spohn, the driver. Morgan stated that he
yelled that they were the "police" and the word "police" was on their vests. The officers had their
weapons drawn. Morgan got appellant Gorman out of the truck and on the ground, placed his weapon
in its holster, and pushed appellant to the ground a second time. At this point, appellant hit Morgan
twice, ran into the nearby woods and escaped into the night. Morgan was left holding appellant's shirt
and glasses.

 Officer Duarte searched the tan vehicle. Under the passenger seat, he found two
Marlboro cigarette flip-top boxes or packages. Upon examination, Duarte found inside each box a
plastic bag containing white powdery substance. A thorough search of the truck revealed no other
contraband. The officers learned appellant's name from Spohn, the driver and registered owner of
the pickup truck involved, or they possibly could have obtained appellant's name from Adrian. An
arrest warrant was issued for appellant, but, within a week of the incident, appellant surrendered to
authorities. Morgan had not seen Adrian for two or three years before trial and did not know his
"whereabouts."

 A chain of custody of the cocaine was established. Dennis Ramsey, a criminalist with
the Texas Department of Public Safety, testified that a chemical analysis showed that the substance
found was 54.78 grams of cocaine. It was further shown that one identifiable fingerprint was found
on one of the plastic baggies of cocaine. It did not match either appellant's or Spohn's fingerprints
and remained unmatched.

 Appellant did not testify or offer any evidence at the guilt/innocence stage of trial. 


Extraneous Offenses

 In his first point of error, appellant contends that the "trial court erred in admitting
extraneous offenses and bad acts of appellant at the guilt/innocence phase of the trial which violate
Rules 403 and 404(b), Texas Rules of Evidence."

 As the point of error indicates and appellant's brief confirms, the point of error is
multifarious in nature, complaining generally of several different actions of the trial court. Normally,
multifarious points of error do not present anything for review. If it can be said that the current
appellate rules have abandoned any specific bar to multifarious issues or points, the formulation of
the first point of error still renders the error unclear. See 43A George E. Dix & George O. Dawson,
Texas Practice: Criminal Practice and Procedure § 43.406 (West 2d ed. 2001); cf. Heiselbetz v.
State, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995). Moreover, there has been no compliance with
our briefing rules. See Tex. R. App. P. 38.1(h). If there were express objections to the several matters
on the basis of Rules 403 and 404(b) as claimed, appellant has not directed our attention thereto and
we have not found any such objections. The record references that were given may have been to the
correct page number but to the wrong volume of the record. Some of the argument advanced
complains of the introduction of an affidavit over a hearsay objection, not to the offer of extraneous
offenses. The complaint is not properly before this Court.

 The extraneous offenses to which appellant apparently has reference are resisting
arrest, assault on a public servant, and escape. Evidence of these offenses was same transactional
contextual evidence (5) and was clearly admissible. See Rogers v. State, 853 S.W.2d 29, 33-34 (Tex.
Crim. App. 1993); Mayes v. State, 816 S.W.2d 79, 86 n.4 (Tex. Crim. App. 1991). In fact, these same
transaction contextual offenses were admitted without objection during the trial.

 Appellant does not contest this, but apparently claims that subsequently "charging
papers," "a police processing machines [sic]," "controlled substance submission form" and "other
documents" were admitted over objections that the documents should have referred only to the
charged offense but included the same transaction contextual offenses. Appellant does not direct our
attention to where these objections were made, except as to the submission form.

 The improper submission of evidence, however, is not reversible error when the same
facts are introduced by other unobjected-to evidence either by the State or the defense and either
before or after the complained-of ruling. See Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App.
1998); Ybarra v. State, 890 S.W.2d 98, 114-15 (Tex. App.--San Antonio 1994, pet. ref'd). The first
point of error is overruled.


Affidavit for Pretrial Arrest Warrant

 In point of error two, appellant asserts that the "trial court committed error by
admitting the probable cause affidavit and admitting other hearsay over appellant's objections." 
(Emphasis added). Here again, the point of error is multifarious in nature. Appellant's brief,
however, refers us only to State's exhibit number two, the probable cause affidavit for a warrant of
arrest. The short argument advanced in the brief directs our attention to the discussion under point
of error one as to the admission of extraneous offenses.

 During its case-in-chief, the prosecutor offered State's exhibit number two, consisting
of "an arrest warrant affidavit" and a "complaint." Appellant objected, pointing out that probable
cause for appellant's arrest was an uncontested issue, that the exhibit contained hearsay and was
irrelevant and prejudicial. Appellant's objections were overruled. State's exhibit number two
containing two documents was admitted into evidence. (6)

 The grand jury had found probable cause and indicted appellant. Pursuant to the
indictment, appellant was in court for a trial on the merits, accompanied by his attorney. There was
no issue as to probable cause for a pretrial arrest, as appellant's counsel tried to explain. The defense
had not "opened the door" or raised the issue. The trial court abused its discretion and erred in
admitting State's exhibit number two including hearsay. (7)

 Normally, the recitals contained in an affidavit for an arrest warrant or a search warrant
are hearsay and are not admissible before the jury. Foster v. State, 779 S.W.2d 845, 857-58 (Tex.
Crim. App. 1989). Their admission into evidence over objection is error. See Torres v. State, 552
S.W.2d 821, 824 (Tex. Crim. App. 1997). And this is particularly true when the hearsay testimony
is on the issue of probable cause and probable cause is not an issue in the case. Foster, 779 S.W.2d
at 858; Smith v. State, 574 S.W.2d 555, 557 (Tex. Crim. App. 1978); Haynes v. State, 567 S.W.2d
518, 520 (Tex. Crim. App. 1978).

 We must decide here whether the error in admitting the hearsay recitals in State's
exhibit number two was reversible error. For some time the Texas Court of Criminal Appeals has
held that the question of reversal turns on the particular facts of each case. See Baxter v. State, 66
S.W.3d 494, 499 (Tex. App.--Austin 2001, pet. granted); see also Doggett v. State, 530 S.W.2d 552,
556-57 (Tex. Crim. App. 1975); Figueroa v. State, 473 S.W.2d 202, 204 (Tex. Crim. App. 1971). 
The Rules of Appellate Procedure now provide the procedure for determining reversible error. See
Tex. R. App. P. 44.2. Other than constitutional error, any error may be disregarded unless it affects
the substantial rights of the defendant. Id. 44.2(b). The violation of a rule of evidence in the
admission of evidence is considered nonconstitutional error. See Johnson v. State, 967 S.W.2d 410,
417 (Tex. Crim. App. 1998); Tate v. State, 988 S.W.2d 887, 890 (Tex. App.--Austin 1999, pet.
ref'd). The substantial rights of a defendant are affected when the error has a substantial or injurious
effect or influence in determining the jury's verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim.
App. 1997). A criminal conviction should not be overturned for nonconstitutional error if the
appellate court, after examining the record as a whole, has fair assurance that the error did not
influence the jury or had slight effect. See Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App.
2000); Llamas v. State, 12 S.W.3d 469, 471 (Tex. Crim. App. 2000); Baxter, 66 S.W.3d at 499.

 The affidavit in question was a three-page document by the affiant, Sgt. Morgan. It
was partly composed of first, second, and third hand hearsay received from September 12, 1997, the
date of the offense, to September 16, 1997, the date of the arrest warrant affidavit. (8) The affidavit was
not read to the jury or "published" at the time it was introduced into evidence. It is unclear if the
exhibit was ever made available to the jury. 

 The informant did not testify and appellant did not testify nor offer any evidence at the
guilt/innocence stage of the trial. The trial evidence is full of hearsay testimony elicited by both
parties, challenged and unchallenged. (9) The arrest warrant affidavit repeated part of the affiant 
Morgan's trial testimony already before the jury. The nine-paragraph affidavit was more expansive
than the trial testimony as to Morgan's background, experience, and training in the field of narcotic
law enforcement. The affidavit also gave more detail as to Morgan's position on a private lot just
before the "bust" and as to Morgan's struggle with appellant before the escape. This information
would have been admissible if Morgan had been asked. There was, of course, hearsay throughout the
affidavit as is customary in such instruments, and which normally renders these instruments
inadmissible. Some of this hearsay found its way into the trial record independent of the affidavit as
unobjected-to hearsay testimony. There was other hearsay in the affidavit that was damaging to
appellant's case--such as Spohn, the owner of the pickup truck, telling Officer Duarte that all the
cocaine found belonged to appellant, and Duarte passing this information to Morgan before Morgan
executed the affidavit.

 Appellant's counsel cross-examined the affiant Morgan about the information or lack
of information in the affidavit, in much the same manner as the affiant was cross-examined in Baxter,
66 S.W.3d at 500. While Morgan testified that he had searched the informant and his car prior to the
"bust," counsel was able to elicit from Morgan that he made no mention of any searches in the
detailed affidavit or in Morgan's police report. Counsel was able to couple this information with the
fact that the informant was "working off" a pending possession of cocaine case and could have had
cocaine in his possession at the time in question. As to Spohn's disclaimer of cocaine possession and
blame-switching statement, counsel was able to extract from Morgan his belief that Spohn had taken
part in the transaction, and that Spohn had in fact been convicted therefor. Counsel used the affidavit
to elicit testimony and admissions from Morgan that raised doubt about the truthfulness of Morgan's
version of events that was the backbone of the State's case. (10)

 The prosecutor should not have offered State's exhibit number two and the trial court
erred in admitting the affidavit into evidence. It was, however, only appellant who used the State's
exhibit after its introduction during trial. Appellant's counsel skillfully made good use of the affidavit
during cross-examination. Neither party made mention of the affidavit in jury argument.

 After examining the entire record beginning with the voir dire examination of the jury
panel, we conclude that there is little likelihood that the error had a substantial and injurious effect
or influence on the jury's verdict. In light of our review of the record, we have fair assurance that the
error did not influence the jury or had but slight effect. The second point of error is overruled. 


Bolstering, Irrelevant, and Prejudicial Matters

 In point of error three, appellant contends that the "trial court erred in admitting
irrelevant, bolstering, and prejudicial matters over appellant's objections." During the State's case-
in-chief, the prosecutor recalled Morgan. The officer testified that he personally had made two or
three undercover narcotic "buys," that informants working under his supervision had made purchases
of cocaine, and that all of these "buys" had been in the amounts of a gram, half a gram or a quarter
of a gram. (11) To this testimony, appellant responded, "Objection, Your Honor" or "Irrelevant. 
Bolstering. Prejudicial."

 For an issue to be preserved for review there must be a timely objection which
specifically states a legal basis for the objection. See Tex. R. App. P. 33.1(a)(1)(A); Miranda v. State,
813 S.W.2d 724, 728 (Tex. App.--San Antonio 1991, pet. ref'd). A general objection (lacking
specificity) is tantamount to no objection, see Kuczaj v. State, 848 S.W.2d 284, 287 (Tex. App.--Fort
Worth 1993, no pet.), unless the basis of the objection is apparent from the context. Eisenhauer v.
State, 754 S.W.2d 159, 161 (Tex. Crim. App. 1988); Beheler v. State, 3 S.W.3d 182, 187 (Tex.
App.--Fort Worth 1999, pet. ref'd); Frierson v. State, 839 S.W.2d 841, 852 (Tex. App.--Dallas
1992, pet. ref'd). Here, appellant's objections were general in nature. He did not tell the trial court
what he wanted and why he was entitled to a favorable ruling. See Lankston v. State, 827 S.W.2d
907, 909 (Tex. Crim. App. 1992). Appellant has not preserved error for review. Id.

 In his brief appellant still has not pointed out what unimpeached evidence was
bolstered by Morgan's testimony on recall. Moreover, virtually all relevant and admissible evidence
offered by the State to prove its case against an accused beyond a reasonable doubt will be prejudicial. 
See Montgomery v. State, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990); Henderson v. State, 906
S.W.2d 589, 598 (Tex. App.--El Paso 1995, pet. ref'd). It is only "unfair" prejudice that will result
in the exclusion of relevant evidence. See Montgomery, 810 S.W.2d at 378; United States v. Jamil,
707 F.2d. 638, 644-45 (2d Cir. 1988) ("prejudice" does not constitute showing of "unfair prejudice"). 
Appellant did not object on the basis of Rule 403 of the Texas Rules of Evidence, nor has he briefed
the matter on appeal.

 Appellant argues that to be admissible the evidence should be material and relevant. 
We agree. See Tex. R. Evid. 401, 402. One of the elements of the offense that the State was required
to prove beyond a reasonable doubt was possession "with intent to deliver." Intent to deliver may be
inferred from the quantity of drugs possessed. Branco v. State, 599 S.W.2d 324, 325-26 (Tex. Crim.
App. 1979). The 54.78 grams of cocaine seized in the instant case compared to the amount of cocaine
usually purchased in undercover transactions was relevant to a material issue in the case. Tex. R.
Evid. 401; cf. Stewart v. State, 874 S.W.2d 752, 756 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd)
(police officer's testimony as to narcotic trafficking was relevant even though charge was drug
possession). Appellant's trial objection of "irrelevant" was without merit. 

 Moreover, Morgan had testified as to the commission of the offense and his use of a
confidential informant. On cross-examination, appellant injected into the proceedings how Morgan
and the Narcotics Enforcement Team generally selected confidential informants, whether their
credibility or criminal records were checked, how they were compensated or paid, whether written
agreements were used, whether informants were searched before "buys," and how the informants were
generally utilized. Once a matter is injected into the proceedings, evidence to fully explain the matter
is relevant and admissible even though the evidence might not otherwise be admissible. Hughes v.
State, 850 S.W.2d 260, 263 (Tex. App.--Fort Worth 1993, pet. ref'd) (citing Parr v. State, 557
S.W.2d 99, 102 (Tex. Crim. App. 1977)). This is referred to as the rule of optional completeness. 
Tex. R. Evid. 107; Hood v. State, 828 S.W.2d 87, 89-90 (Tex. App.--Austin 1992, no pet.). This rule
furnishes another basis for the admission of Morgan's testimony. The third point of error is
overruled. 


Motion For Instructed Verdict

 In his fourth point of error, appellant asserts that the "trial court committed error by 
failing to grant the appellant's motion for instructed verdict (no affirmative link between the cocaine
and the appellant), in light of the overwhelming evidence that the confidential informant was
untrustworthy as a matter of law."

 When the State rested its case at the guilt/innocence stage of the trial, appellant filed
two motions for an instructed verdict of "not guilty." One was based on the claim that the evidence
was insufficient to show appellant's "intent to deliver," and the other claimed that the State failed to
prove appellant's possession of the cocaine. Both motions were denied. Neither of these motions
were based on the untrustworthiness of a non-testifying informant as now raised on appeal. If there
was a third motion, appellant has not called it to our attention nor have we found such a motion in
the record. A complaint on appeal must correspond to the trial motion or objection. See Sterling v.
State, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990). A trial motion or objection stating one legal
basis may not be used on appeal to support a different legal theory. See Rezac v. State, 782 S.W.2d
869, 870 (Tex. Crim. App. 1990); Shelvin v. State, 884 S.W.2d 874, 877 (Tex. App.--Austin 1994,
pet. ref'd). A ruling on a motion for instructed verdict is actually a challenge to the sufficiency of the
evidence to support the conviction. Madden v. State, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990). 
Since there is no motion or ruling based on the informant's trustworthiness, nothing is presented for
review. Appellant's general challenge to the sufficiency of the evidence is discussed elsewhere in this
opinion.

 Appellant's contention is rather novel--that is, a defendant may be acquitted if the
evidence shows that a non-testifying informant in a narcotic case was untrustworthy as a matter of
law. Appellant has not cited any authority and we have found none. The State has not briefed this
particular contention or theory. Appellant's theory is not to be confused with the provisions of article
38.141 of the Code of Criminal Procedure requiring that the testimony of an informant must be
corroborated. See Tex. Code Crim. Proc. Ann. art. 38.141 (West Supp. 2003); Cantelon v. State, 85
S.W.3d 457 (Tex. App.--Austin 2002, no pet.); see also Young v. State, No. 01-01-01235-CR, 2002
Tex. App. LEXIS 8087 (Tex. App.--Houston [1st Dist.] November 14, 2002). For the reasons stated,
appellant's fourth point of error is overruled.


Legal Sufficiency of Evidence

 In his fifth point of error, appellant challenges the legal sufficiency of the evidence to
support his conviction. He urges that he is entitled to an acquittal. The standard for reviewing the
legal sufficiency of the evidence is whether, viewing the evidence in the light most favorably to the
jury's verdict, any rational trier of fact could have found beyond a reasonable doubt all the essential
elements of the offense charged. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Lane v. State, 993
S.W.2d 504, 507 (Tex. Crim. App. 1996); Skillern v. State, 890 S.W.2d 849, 879 (Tex. App.--Austin
1994, pet. ref'd). The standard of review is the same in both direct and circumstantial evidence cases. 
King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995). It is important to remember that all the
evidence that the jury was permitted to consider properly or improperly must be taken into account
in determining the legal sufficiency of the evidence. See Garcia v. State, 919 S.W.2d 370, 378 (Tex.
Crim. App. 1994); Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The jury is the
exclusive judge of the facts proved, the credibility of the witnesses, and of the weight to be given their
testimony. Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). The reviewing court
does not realign, disregard, or weigh the evidence. Rodriguez v. State, 939 S.W.2d 211, 218 (Tex.
App.--Austin 1997, no pet.).

 The indictment charged in pertinent part that appellant, on or about September 12,
1997, "did then and there intentionally and knowingly possess, with intent to deliver a controlled
substance, namely, cocaine, in an amount of four (4) grams or more but less than 200 grams." To
establish unlawful possession of a controlled substance, the State must prove first that the defendant
exercised actual care, custody, control or management (12) over the contraband, and second, that he was
conscious of his connection with it and knew what it was. King, 895 S.W.2d at 703. Here, of course,
proof must also be made of "intent to deliver" as alleged in the indictment. This proof is usually
made by circumstantial evidence. Gabriel v. State, 842 S.W.2d 328, 331 (Tex. App.--Dallas 1992)
aff'd, 900 S.W.2d 721 (Tex. Crim. App. 1995); United States v. Meneses-Davila, 580 F.2d. 888, 897
(5th Cir. 1978) (possession of large amount of contraband); see also Rhodes v. State, 913 S.W.2d 242,
251 (Tex. App.--Fort Worth 1995), aff'd, 945 S.W.2d 115 (Tex. Crim. App. 1997).

 Mere presence at the scene is not sufficient to establish unlawful possession of a
controlled substance, but evidence which affirmatively links a defendant to the controlled substance
will suffice to prove that he possessed it knowingly. McGoldrick v. State, 682 S.W.2d 573, 578-79
(Tex. Crim. App. 1985); Collins v. State, 901 S.W.2d 503, 505 (Tex. App.--Waco 1994, pet. ref'd). 
Affirmative links may be established by facts and circumstances that indicate the knowledge of and
control over the contraband. See Grant v. State, 989 S.W.2d 428, 433 (Tex. App.--Houston [14th
Dist.] 1999, no pet.).

 The control over the contraband need not be exclusive, but can be jointly exercised
by more than one person. McGoldrick, 682 S.W.2d at 578. When the contraband is not found on the
accused's person, and the accused is not in exclusive control of the premises, place, or car in which
the contraband is found, the prosecution must show additional links between the contraband and the
accused. Smith v. State, 56 S.W.3d 739, 747 (Tex. App.--Houston [14th Dist.] 2001, pet. ref'd);
Puente v. State, 888 S.W.2d 521, 526 (Tex. App.--San Antonio 1994, no pet.); Villegas v. State, 871
S.W.2d 894, 896 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd).

 "Affirmative links" is a shorthand expression to identify what must be proven in a
prosecution for the possession of contraband. Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App.
1995). The State must point to specific facts and circumstances surrounding the defendant's
possession--other than mere presence of drugs--which raise a reasonable inference of the accused's
knowledge and control of the contraband. Harris v. State, 994 S.W.2d 927, 933 (Tex. App.--Waco
1999, pet. ref'd); Fields v. State, 932 S.W.2d 97, 103 (Tex. App.--Tyler 1996, pet. ref'd). The
affirmative links between the accused and the contraband must establish that the accused's connection
with the contraband was more than just "fortuitous." Brown, 913 S.W.2d at 747.

 Courts have identified numerous factors that constitute affirmative links. See, e.g.,
Washington v. State, 902 S.W.2d 649, 652 (Tex. App.--Houston [14th Dist.] 1995, pet. ref'd);
Gilbert v. State, 874 S.W.2d 290 (Tex. App.--Houston [1st Dist.] 1994, no pet); Whitworth v. State,
808 S.W.2d 566, 569 (Tex. App.--Austin 1991, pet. ref'd). The number of factors present is not as
important as the "logical force" or the degree to which the factors alone, or in combination, tend to
affirmatively link the accused to the contraband. Whitworth, 808 S.W.2d at 569. Each case must be 
reviewed on its own facts for evidence of affirmative links. Id. The affirmative links ordinarily
emerge from an orchestration of several facts and the logical force they have in combination. See
Rivera v. State, 59 S.W.3d 268, 272 (Tex. App.--Texarkana 2001, pet. ref'd).

 The scene in the instant case was a parking lot of a rural store that was closed. The
officers had information from Spohn that "Gorman" would be with him at the time of the "buy." 
Appellant was there as a passenger in Spohn's truck. It was an enclosed area and appellant was in
close proximity to where the contraband was found under the passenger seat. He had easy access to
the contraband. When asked to leave the passenger seat, appellant did, but then struggled with Sgt.
Morgan and assaulted him, and escaped by flight into the night. The amount of cocaine found was
over 54 grams, far more than the normal undercover "buys" of cocaine in which Sgt. Morgan had
participated. Spohn told the officers that the cocaine belonged to appellant. We find that the
evidence is sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that
appellant possessed the cocaine with intent to deliver.

 We need not rest our disposition of this point of error on this conclusion alone. Under
our law, a party may be criminally responsible for the offense charged. See Tex. Penal Code Ann.
§ 9.02 (West 1994). Appellant was indicted as a primary actor, not as a party. If evidence is
produced during the course of a trial, however, which would warrant a charge on the law of parties,
the trial court may charge the jury on that issue, even in the absence of an allegation in the indictment
charging the accused as a party. Swope v. State, 805 S.W.2d 442, 444 (Tex. Crim. App. 1991); Pitts
v. State, 569 S.W.2d 898, 900 (Tex. Crim. App. 1978). Here, the trial court concluded the evidence
was sufficient and charged on the law of parties under section 7.02(a)(2) of the Penal Code. Tex.
Penal Code Ann. § 7.02(a)(2) (West 1994). There was no objection to the court's charge. Appellant
raises no complaint on appeal about the jury charge. 

 Without reiterating all the evidence, the instant record shows that Jeff Spohn made an
agreement with Adrian, the informant, to sell two ounces of cocaine for $2000 at Hollingsworth
Corner. Spohn arrived at the appointed time and location accompanied by appellant whom he had
indicated would be with him. He met with the informant and was in the driver's side of the pickup
truck when arrested. The affirmative links showed that Spohn was the driver of the truck and one of
its registered owners. The cocaine was found inside the truck, an enclosed area. The amount of
cocaine was 54.78 grams, a little less than the two ounces requested by the informant. The evidence
is sufficient to show that appellant, knowing Spohn's unlawful intent was present to aid or attempt
to aid Spohn in the sale of the cocaine. See Tex. Penal Code Ann. § 7.02(a)(2) (West 1994). The
jury's verdict at the guilt/innocence stage of the trial was a general one, and the evidence was
sufficient to support that verdict on either the theory that appellant was the primary actor or acted with
Spohn as a party. The fifth point of error is overruled. (13)


Jury Charge Error or Variance?

 In his sixth point of error, appellant contends that the "trial court committed error by
including enhancement paragraph in punishment charge (fatal variance between allegations and
evidence)." Appellant does not direct us to any portion of the record where this contention was
presented to the trial court. See Tex. R. App. P. 38.1(h). Moreover, appellant has not preserved this
jury charge error for review. See Tex. Code Crim. Proc. Ann. arts. 36.14, 36.15 (West Supp. 2003). 
Appellant makes no mention of the standard of review for jury charge error. See Tex. Code Crim.
Proc. Ann. art. 36.19 (West 1981); Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984,
op. on reh'g), nor does appellant brief the issue of jury charge error. See Tex. R. App. P. 38.1. 
Nothing is presented for review regarding a jury charge error.

 Apparently, what appellant is trying to urge is a claimed variance between the allegata
and probata regarding the enhancement paragraph of the indictment alleging a prior robbery
conviction. Appellant argues that the indictment alleged the prior conviction occurred on "November
20, 1990" while the proof showed the conviction occurred on November 2, 1990." Appellant
contends this eighteen-day variance is fatal. Appellant does not tell us that he unsuccessfully
presented this contention to the trial court in a motion for an instructed verdict at the penalty stage
of the trial. Being rebuffed, appellant used the variance in his jury argument to convince the jury to
disregard the prior conviction in assessing punishment. He did not succeed.

 The purpose of the enhancement allegations is to provide the accused with a notice of
the prior conviction to be relied upon and to avoid surprise. Human v. State, 749 S.W.2d 832, 836
(Tex. Crim. App. 1988); Cole v. State, 611 S.W.2d 79, 82 (Tex. Crim. App. 1981). Allegations of
prior convictions for enhancement of punishment purposes need not be stated with the same
particularity of the original or primary offense. See Watson v. State, 605 S.W.2d 877, 883 (Tex. Crim.
App. 1979); Zimmerlee v. State, 777 S.W.2d 791, 792 (Tex. App.--Beaumont 1989, no pet.). A mere
variance between the allegations and the proof will not render evidence insufficient to sustain the
conviction. Human, 747 S.W.2d at 836. The variance between the indictment's allegations and proof
must be material and prejudicial. See Hall v. State, 619 S.W.2d 156, 157 (Tex. Crim. App. 1980);
Plessinger v. State, 536 S.W.2d 380, 381 (Tex. Crim. App. 1976). To be material, the variance must
be such as to surprise or mislead the party to his prejudice. Freda v. State, 704 S.W.2d 412 (Tex.
Crim. App. 1986); Zimmerlee, 777 S.W.2d at 792. In variance law, the burden of demonstrating
surprise or prejudice rests upon the defendant. Santana v. State, 59 S.W.3d 187, 194 (Tex. Crim.
App. 2001); Human, 749 S.W.2d at 837. A defendant's rights under the Fifth Amendment to the
United States Constitution are not implicated. Santana, 59 S.W.3d at 194-95.

 In Valenti v. State, 49 S.W.3d 594, 598 (Tex. App.--Fort Worth 2001, no pet.), the
court held that the variance was immaterial where the indictment alleged the prior conviction occurred
on "August 25" and the proof showed "August 15" of the same year, and the defendant was neither
surprised nor misled by the variance. Valenti is strikingly similar to the instant case. See also
Thompson v. State, 563 S.W.2d 247, 251 (Tex. Crim. App. 1978); 43 George E. Dix & Robert O.
Dawson, Texas Practice: Criminal Practice and Procedure § 31.153 (West 2d ed. 2001).

 In Plessinger, 536 S.W.2d at 381, the indictment alleged the prior conviction was
styled "State of Texas" against Plessinger while the proof showed the prior conviction was styled
"State of Arizona" against Plessinger. The Texas Court of Criminal Appeals held that the defendant
was neither surprised nor misled to his prejudice by the difference between the style of the prior
conviction alleged and proved.

 In Baity v. State, 455 S.W.2d 305, 310 (Tex. Crim. App 1970), the variance was that
the indictment alleged a prior conviction for enhancement as having occurred on "February 1, 1961"
and the typed in blank on the formal sentence form reflected the year as "19561." The court held that
there was no fatal variance between the dates as the error was obviously typographical.

 Appellant had notice of the prior conviction by virtue of the indictment. By means of
discovery, appellant received a copy of the prior judgment and sentence reflecting the correct date. 
Appellant does not claim that the prior conviction was not his conviction. Appellant has not
demonstrated that he was surprised or misled to his prejudice by the variance. The eighteen-day
variance was not material and did not render the evidence insufficient as to the prior conviction
alleged. Appellant's reliance upon Head v. State, 419 S.W.2d 375 (Tex. Crim. App. 1967) is
misplaced. For all the reasons stated, the sixth point of error is overruled.

 The judgment is affirmed.



 __________________________________________

 John F. Onion, Jr., Justice

Before Justices Kidd, B. A. Smith and Onion *

Affirmed

Filed: January 16, 2003

Do Not Publish












 

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1.   See Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 2.02, 1993 Tex. Gen. Laws 3586,
3705-06 (Tex. Health & Safety Code § 481.112(a), (d), since amended, Tex. Health & Safety Code
§ 481.112(a), (d) (West Supp. 2003)).
2.   The record reflects that Adrian had a written agreement with the Narcotics Enforcement
Team in August 1997 to make ten cases within sixty days to "work off" a pending offense of
possession of cocaine with intent to distribute. A similar agreement had been entered in July 1997
for Adrian to "work off" a pending burglary offense.
3.   Morgan could not remember the make or model of the car searched. The August 1997
agreement between Adrian and the Narcotics Enforcement Team provided that Adrian would be
furnished a Mercury Marquis automobile to use.
4.   Morgan related that it had not been planned for money to be exchanged, and Adrian had
not been given any money.

5.   Such evidence imports to the trier of fact information essential to understanding the context
and circumstances of events which, although legal separate offenses from the charged offense, are
blended and interwoven. Mayes v. State, 816 S.W.2d 79, 86 n.4 (Tex. Crim. App. 1991). As such,
it is admissible, not for the purpose of showing character conformity, but to illustrate the nature of
the crime alleged. Camacho v. State, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993).
6.   An affidavit for an arrest warrant is called a "complaint" if it charges the commission of
an offense. See Tex. Code Crim. Proc. Ann. art. 15.04 (West 1977); 40 George E. Dix & Robert O.
Dawson, Texas Practice: Criminal Practice and Procedure § 8.21 (West 2d ed. 2001). Just why
there were two instruments is not clear. The "complaint" was the type normally used. The separate
affidavit for an arrest warrant was a lengthy and detailed account of the offense.
7.   A "hearsay" objection is sufficiently specific to preserve error for review. See Tex. R. App.
P. 33.1(a)(1)(A); Lankston v. State, 827 S.W.2d 907, 910 (Tex. Crim. App. 1992); see also Cofield
v. State, 891 S.W.2d 952, 954 (Tex. Crim. App. 1994).
8.   The "complaint" on the fourth page of State's exhibit number two is not referred to in the
briefs. We do not find it mentioned in the interrogation of the witnesses.
9.   Unobjected-to hearsay testimony has probative value like substantive evidence and may
be assessed and weighed by the jury with other evidence admitted at trial. Fernandez v. State, 805
S.W.2d 451, 455 n.3 (Tex. Crim. App. 1991); Chambers v. State, 711 S.W.2d 246, 247 (Tex. Crim.
App. 1986); Peters v. State, 997 S.W.2d 377, 382-83 (Tex. App.--Beaumont 1999, no pet.).
10.   We have taken into account a defendant's right to meet, destroy, or explain improperly
admitted evidence. See Leday v. State, 983 S.W.2d 713, 719 (Tex. Crim. App. 1998); Thomas v.
State, 572 S.W.2d 507, 512 (Tex. Crim. App. 1978); Baxter v. State, 66 S.W.3d 494, 500 n.3 (Tex.
App.--Austin 2001, pet. granted).
11.   There was no testimony as to the value of the cocaine purchased or the amount of money
that was exchanged.
12.   Section 481.002 (38) of the Health and Safety Code defines "possession" to mean "actual
care, custody, control, or management." See Tex. Health & Safety Code Ann. § 481.002(38) (West
Supp. 2003); see also Tex. Penal Code Ann. § 1.07(39) (West 1994) (same definition).
13.   Appellant does not present a point of error challenging the factual sufficiency of the
evidence. In his brief in point of error five, appellant merely contrasts the standard of review in legal
sufficiency cases with that of factual sufficiency cases.