# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00061-CR
## NO. 03-01-00062-CR

**Larry Dale Baxter, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT
### NO. B-00-0246-S & B-00-0248-S, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING

Appellant Larry Dale Baxter was convicted, in a jury trial, of the offenses of engaging in organized criminal activity and of gambling promotion. *See* Tex. Pen. Code Ann. §§ 71.02(a)(2) (West Supp. 2002), 47.03(a)(1) (West 1994). The trial court assessed appellant's punishment for engaging in organized criminal activity at confinement in a state jail facility for a period of two years and a fine of $500; imposition of sentence was suspended and appellant was granted community supervision for two years and ordered to pay his fine and costs. The trial court assessed appellant's punishment for gambling promotion at confinement in the county jail for a period of one year and a fine of $500; imposition of sentence was suspended and appellant was granted community supervision for one year and ordered to pay his fine and costs.

Appellant asserts that the evidence is insufficient to support the jury's verdicts and that the trial court erred in admitting inadmissible evidence, in excluding admissible evidence, in

improperly curtailing jury voir dire, in charging the jury, and in refusing to allow a sitting juror to be interrogated. The judgments will be affirmed.

**Sufficiency of Evidence**

In his sixth and seventh points of error, appellant insists that the evidence is insufficient to support the jury's verdicts. In reviewing the legal sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Patrick v. State*, 906 S.W.2d 481, 486 (Tex. Crim. App. 1995); *Aiken v. State*, 36 S.W.3d 131, 132 (Tex. App.—Austin 2000, pet. ref'd). The standard of review is the same whether the evidence is direct or circumstantial, or both. *See Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999); *Banda v. State*, 890 S.W.2d 42, 50 (Tex. Crim. App. 1994).

A person commits the offense of engaging in organized criminal activity if, with the intent to establish, maintain, or participate in a combination or the profits of a combination, he commits or conspires to commit any gambling offense punishable as a Class A misdemeanor. Tex. Pen. Code. Ann. § 71.02(a)(2) (West Supp. 2002). "Combination" means three or more persons who collaborate in carrying on criminal activities. *Id*. § 71.01(a). A person commits the Class A misdemeanor offense of gambling promotion if he intentionally or knowingly operates or participates in the earnings of a gambling place. *Id*. § 47.03(a)(1)(d) (West 1994). "Gambling Place" means any real estate, building, room, tent, vehicle, boat, or other property whatsoever, one of the uses of which

2

is the making or settling of bets. *Id*. § 47.01(3). "Bet" means any agreement to win or lose something of value solely or partially by chance. *Id*. § 47.01 (1) (West Supp. 2001).

In appellate cause number 3-01-00061-CR, the indictment charged that on or about May 6, 1999, appellant

> did then and there, with intent to establish, maintain, or participate in a combination or in the profits of a combination, said combination consisting of LARRY DALE BAXTER, SHANNON CARPENTER, CINDY RICHARDS, AND JERRY DEAN CLEMENTS, who collaborated in carrying on the hereinafter described criminal activity, commit the offense of Gambling Promotion, to-wit: by operating and participating in the earnings of a gambling place, namely: a building located at 1601 Harrison, San Angelo, Texas, by then and there making and settling of bets.

A San Angelo Police SWAT team executed a search warrant and searched the house located at 1601 Harrison, in the city of San Angelo. When they entered the house, the officers found a craps table, dozens of dice, thousands of dollars in cash, and a notebook keeping account of debts. One of the windows was boarded up so the craps table could not be seen from outside the house. Signs posted inside the home declared "no checks, no credit, cash only."

Evidence shows that appellant assisted by Clements, Carpenter, and Richards conducted craps games in the building located at 1601 Harrison in San Angelo, where bets were made and settled. Appellant furnished free drinks and barbecue to those who participated in the dice games. Appellant used a dice table similar to those used in well known casinos. Many citizens in the community participated in the dice games conducted by appellant and the other alleged individuals. Large amounts of money—thousands of dollars—were bet and lost. To prove appellant guilty of the

3

offense charged, it was not necessary to show that he profited from the games. However, there is ample evidence that he did.

The jury as the trier of fact could rationally find from the direct and circumstantial evidence, viewed in the light most favorable to the prosecution, that appellant was guilty, beyond a reasonable doubt, of intentionally participating in a combination with Clements, Carpenter, and Richards to commit the Class A misdemeanor gambling offense of gambling promotion by intentionally and knowingly using the place alleged where bets were made and settled. The evidence is sufficient to support the jury's verdict finding appellant guilty of engaging in organized criminal activity. Appellant's sixth point of error is overruled.

In appellate cause number 3-01-00062-CR, it was charged that on or about March 31, 1999, appellant,

> did then and there, with intent to establish, maintain, or participate in a combination or in the profits of a combination, said combination consisting of LARRY DALE BAXTER, JERRY DEAN CLEMENTS, AND ROBERT FAIRCHILD, who collaborated in carrying on the hereinafter described criminal activity, commit the offense of GAMBLING PROMOTION, to-wit: by operating and participating in the earnings of a gambling place, namely: a building located at 1122 E. 22nd, San Angelo, Texas, by then and there making and settling of bets.

This case was tried jointly with cause number 3-01-00061-CR. The jury found appellant guilty of the lesser included offense of gambling promotion. The evidence is amply sufficient for the jury to rationally find beyond a reasonable doubt that appellant used a building located at 1122 E. 22nd in San Angelo to intentionally or knowingly operate a gambling place where bets were made and settled. Appellant's seventh point of error is overruled.

4

**Admission of Affidavit for Search Warrant**

In his first point of error, appellant asserts that the trial court erred in admitting in evidence, over his objection, an affidavit for a search warrant and the warrant. During the testimony of the State's first witness, San Angelo police officer Dick Brock, it was established that Brock had drafted and executed an affidavit and obtained from a magistrate a warrant to search the house at 1601 South Harrison in San Angelo. The State offered and the court admitted in evidence the affidavit and the warrant over appellant's timely hearsay objection. An objection that proffered evidence is "hearsay" is sufficiently specific to require appellate review. *See* Tex. R. Evid. 103 (a)(1); Tex. R. App. P. 33.1(a)(1)(A), (2)(A); *Lankston v. State*, 827 S.W.2d 907, 910 (Tex. Crim. App. 1992).[1]

Admitting in evidence an affidavit for a search warrant over objection has generally been considered error and often reversible error.[2] The Court of Criminal Appeals has observed that

---

[1] "Identifying challenged evidence as hearsay or as calling for hearsay should be regarded by courts at all levels as a sufficiently specific objection, except under the most unusual circumstances [citation omitted]. Indeed, it is difficult to know how much more specific such an objection could be under most circumstances." *Lankston v. State*, 827 S.W.2d 909, 910 (Tex. Crim. App. 1992); *Cofield v. State*, 891 S.W.2d 952, 954 (Tex. Crim. App. 1994). Appellant preserved for appellate review the matter about which he complains.

[2] There are exceptions in which search warrants or affidavits may be admissible over a hearsay objection. When a defendant disputes the existence of a warrant and a warrant exists, the warrant may be admitted before the jury. *See Sallings v. State*, 789 S.W.2d 408, 416-17 (Tex. App. Dallas 1990, pet. ref'd). Also, if a defendant makes probable cause an issue before a jury, hearsay evidence is admissible. *See Juarez v. State*, 758 S.W.2d 772, 774 n.1 (Tex. Crim. App. 1988); *Murphy v. State*, 640 S.W.2d 297, 299 (Tex. Crim. App. 1982); *Adams v. State*, 552 S.W.2d 812, 814 n.1 (Tex. Crim. App. 1977); *Robertson v. State*, 545 S.W.2d 157, 159 (Tex. Crim. App. 1977); *Lacy v. State*, 424 S.W.2d 929, 931 (Tex. Crim. App. 1967). In the instant case, appellant did not claim the officers did not have a warrant and did not make probable cause an issue before the jury.

"[t]aking note of the number of instances in which this court has found it necessary to reverse judgments of conviction on account of the reception in evidence of the recital of facts embraced in the affidavit for the search warrant, the continued frequency with which the error is repeated is the subject of wonder." *Hamilton v. State*, 48 S.W.2d 1005, 1006 (Tex. Crim. App. 1932). Many cases have found that the admission in evidence of affidavits for search warrants over objection constitutes error. *See Figueroa v. State*, 473 S.W.2d 202, 204 (Tex. Crim. App. 1971); *Tucker v. State*, 339 S.W.2d 64, 64 (Tex. Crim. App. 1960); *Zorn v. State*, 321 S.W.2d 90, 90 (Tex. Crim. App. 1959); *Hicks v. State*, 318 S.W.2d 652, 652 (Tex. Crim. App. 1958); *Dillon v. State*, 2 S.W.2d 251, 251 (Tex. Crim. App. 1928); *Pratt v. State*, 748 S.W.2d 483, 484 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd). The admission of the affidavit and warrant, over appellant's objection, was error. We must decide whether the error is reversible error. Cases decided before the adoption of the Rules of Appellate Procedure were said to turn on the facts of each particular case. *See Figueroa*, 473 S.W.2d at 204; *Hamilton*, 48 S.W.2d at 1005; s*ee akso Torres v. State*, 552 S.W.2d 821, 824 (Tex. Crim. App. 1977); *Doggett v. State*, 530 S.W.2d 552, 556-67 (Tex. Crim. App. 1975).

The Rules of Appellate Procedure now provide the rule for determining reversible error. *See* Tex. R. App. P. 44.2. Other than constitutional error, any error must be disregarded unless it affects substantial rights of the defendant. *Id*. 44.2(b). The violation of a rule of evidence in the admission of evidence, as in this case, is considered non-constitutional error. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); *Tate v. State*, 988 S.W.2d 887, 890 (Tex. App.—Austin 1999, pet. ref'd). Similarly, the erroneous exclusion of defensive evidence is not constitutional error if the trial court's ruling merely

6

offends the rules of evidence.  *See Miller v. State*, 42 S.W.3d 343, 346 (Tex. App.—Austin 2001, no pet.).

A defendant's substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.  *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000) (citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)).  A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but slight effect.  *Id*. (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).  In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case.  The reviewing court might also consider the jury instruction given by the trial judge, the State's theory and any defensive theories, closing arguments and even voir dire, if material to appellant's claim.  *Id*. (citing *Llamas v. State*, 12 S.W.3d 469, 471 (Tex. Crim. App. 2000)).

The affidavit that was erroneously admitted in evidence was a seven-page instrument comprised of hearsay received by the affiant between December 11, 1997 and May 5, 1999.  Much of the information was second-hand and third-hand hearsay coming from unnamed informers.  However, the record affirmatively shows by a statement of defense counsel at the charging conference that to that point the affidavit had not been published to the jury.  The record does not show that the jurors ever knew the contents of the affidavit and warrant other than through defense counsel's extended, penetrating, caustic cross-examination of the affiant Brock and another police officer.

7

Defense counsel cross-examined the affiant Brock and police officer Dennis McGuire, one of Brock's informers, concerning the information contained in the affidavit. Counsel elicited testimony and admissions from the officers casting substantial doubt about the truthfulness of a considerable part of the information included in the affidavit.[3] Then in closing argument, defense counsel argued at length that Brock's affidavit contained thirty-one lies which the defense had exposed during cross-examination of Brock. In part defense counsel argued:

> [Y]ou saw Detective Brock up here showing you a list of so many lies that it was embarrassing. I mean, he took a sworn document--and when I say sworn to, people, I mean these judges have to rely on that they're telling the truth. . . . And what is so frightening about what Detective Brock brought you is after he knew it was all lies, after we went over. . . thirty-one of them, that he--through his investigation, he found out that they were lies. . . . When faced with all these lies in the sworn document that he'd given the Judge, what did he say? Well, I still believe my old snitch. . . . Can you throw all these names in here and slander all these people? How about this list of people?

Defense counsel then named a number of citizens about whom he had cross-examined Brock because they had been named in the affidavit as participants in the alleged unlawful dice games. Counsel stressed that among these citizens named were a former Tom Green County elected official and a prominent lawyer practicing in San Angelo. Counsel continued:

> I don't think it's okay to slander and just make up stuff and take some old boy that's on felony probation, try to work out a deal with him, get him to tell you some lies so you can get a search warrant. Because you know what, people, the Judge doesn't issue a search warrant unless he finds probable cause. If all that stuff was in there was true, they'd have had probable cause. If there was a door man, somebody taking

---

[3] We have taken into account a defendant's right to meet, destroy, or explain improperly admitted evidence. *See Leday v. State*, 983 S.W.2d 713, 719 (Tex. Crim. App. 1998); *Thomas v. State*, 572 S.W.2d 507, 512 (Tex. Crim. App. 1978).

money at the door, then you got an illegal game if you're charging, the house has an advantage. . . . The house has an advantage, it's an illegal game. That's all over that affidavit, that's all over Brock's testimony. Because if what Brock told that Judge was true, what Larry did was against the law. . . .

[The magistrate signed the warrant] because he believed Brock would do what's right and tell him the truth. And not only did Brock lie to him about what he put in there, but he doesn't even have the respect for you to come in here and say, "I'm sorry about that. You know, I–he gave me that information, I put it in there, I found out it was wrong. I wish I'd have known it was wrong." Well, what's Dick supposed to do? How about investigate it? How about these dates these games are going on? How about go down and look and see if Baxter was even there? He's on duty.

Then it gets worse, if it can. After you take this search warrant that slanders all these good people over here in San Angelo, then he calls in what, a SWAT team. A SWAT team to go into a private home where guys are throwing some dice and having a beer. Would the Judge have let him go in there if he'd have known the truth? Nah, no way. No Judge would ever in the world have signed that warrant. But Brock lied to him.

Appellant offered no testimony in his defense. However, throughout the trial, in voir dire, in cross-examination, and in closing jury argument, appellant presented a consistent defensive theory. Appellant maintained there was no evidence he was acting in an unlawful combination as alleged and that the dice games were fair and not unlawful. The defense attempted to show this by cross-examination and argued that: (1) Brock had only read about dice games in a book and did not understand dice games, (2) Brock lied at least thirty-one times in the affidavit by which he obtained a search warrant, (3) Brock slandered many upstanding citizens in the community by falsely swearing they had participated in unlawful dice games, (4) Brock was playing "supercop" by calling in a SWAT team to serve the search warrant, and (5) the machine gun carrying, hooded, combat attired SWAT team raided a friendly dice game "on a beautiful afternoon in May" when some "buddies" were having barbecue and "pitching dice."

9

The State unwisely offered in evidence the affidavit and the search warrant and the trial court erred in admitting them. However, it was only the defense that used the affidavit during trial and in jury argument. Defense counsel adroitly used the affidavit in cross-examination and in his closing jury argument.

After examining the entire record, we conclude that there is little likelihood that the error had a substantial and injurious effect or influence on the jury's verdict; from our review of the record, we have fair assurance that the error did not influence the jury or had but slight effect. Appellant's first point of error is overruled.

## Limiting Instruction

In his fourth point of error, appellant complains that the trial court erred in denying his request for a limiting instruction as to State's Exhibit 37, the search warrant and affidavit. When the search warrant affidavit and warrant were admitted in evidence over appellant's objection, appellant did not ask for a limiting instruction. Apparently, appellant took the sound position that the affidavit and warrant were not admissible for any purpose. However, after testimony was closed, appellant filed a written request asking the trial court to instruct the jury that: "The search warrant and its contents are not offered for the truth of the matter asserted. The contents and the statements contained therein are not evidence and should not be considered by you for any purpose. The search warrant is in evidence solely to show that a search warrant existed on May 6, 1999."

At the charging conference, defense counsel suggested, that rather than giving his requested charge, the trial court reconsider and change its ruling admitting this evidence. Defense counsel pointed out that, "I feel like if [this evidence] is removed from evidence at this time, it hasn't been published to the jury," the error in admitting the evidence would be cured. Counsel suggested

the court could reopen for the purpose of changing its ruling and withdraw the erroneously admitted evidence. The State voiced an objection that when the affidavit and search warrant were offered, counsel made no objection to the affidavit but objected that the whole document [affidavit and warrant] was hearsay. Further, the State reminded the court that it was the defense counsel who had used the contents of the affidavit to extensively cross-examine the State's witnesses. Also, the State argued that appellant had waived any claim that the evidence was admissible for only a limited purpose by not making that objection at the time the evidence was admitted. The court concluded, perhaps erroneously, that it could not reopen for the purpose of changing the ruling because both sides had closed.

Appellant's requested charge was not included in the court's jury charge. On appeal, the State urges that appellant was not entitled to a limiting charge because he did not ask for it when the evidence was admitted. The State cites *Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001), a case decided after the trial of the instant case. *Hammock* interprets Rule of Evidence 105(a)[4] and holds that a defendant is not entitled to a jury instruction limiting consideration of evidence unless he requested a limiting instruction at the time the evidence was admitted.

---

[4] **Rule 105. Limited Admissibility**

    (a) Limiting Instruction. When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; but, in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal.

Tex. R. Evid. 105(a).

In this case, the affidavit and warrant were not admissible for any purpose; they were not admissible for a limited purpose. Their admission was error, but we have fully considered the error and found it harmless. Because the affidavit and warrant were not admissible for a limited purpose in this case, the trial court did not err in failing to give the requested charge. Appellant's fourth point of error is overruled.

**Voir Dire on Lesser Included Offenses**

In his second point of error, appellant asserts that the trial court erred in refusing to permit him to voir dire the venire on the affirmative defenses contained in Sections 47.02 and 47.04 of the Penal Code. *See* Tex. Pen. Code Ann. §§ 47.02(b) (West Supp. 2001),[5] 47.04(b) (West 1994).[6]

---

[5]   (b)   It is a defense to prosecution under this section that:

    (1)   the actor engaged in gambling in a private place

    (2)   no person received any economic benefit other than personal winnings; and

    (3)   except for the advantage of skill or luck, the risks of losing and the chances of winning were the same for all participants.

Tex. Pen. Code Ann § 47.02(b) (West Supp. 2001).

[6]   (b)   It is an affirmative defense to prosecution under this section that:

    (1)   the gambling occurred in a private place;

    (2)   no person received any economic benefit other than personal winnings; and

The underlying offense with which appellant was charged in these cases, we reiterate, was Section 47.03(a)(1) of the Penal Code. *See* Tex. Pen. Code Ann. § 47.03(a)(1) (West 1994). Section 47.03(a)(1) does not provide for any affirmative defenses. It has been recognized that Sections 47.02, 47.03, and 47.04 have different purposes and that the legislature sought to decriminalize social gambling and to provide minimal penalties for the individual who utilizes the services of a professional gambler. *See Adley v. State*, 718 S.W.2d 682, 683 (Tex. Crim. App. 1985); *Henderson v. State*, 661 S.W.2d 721, 724-26 (Tex. Crim. App. 1983). Also, affirmative defenses such as these provided for in Sections 47.02 and 47.04 are not applicable to Section 47.03. *See State v. Amvets Post Number 80*, 541 S.W.2d 481, 483 (Tex. Civ. App.—Dallas 1976, no writ). However, the gist of appellant's argument is that the offenses of keeping a gambling place prohibited by Section 47.04 and gambling prohibited by Section 47.02 are lesser included offenses of gambling promotion prohibited by Section 47.03. Therefore, appellant argues he was entitled to voir dire the jury on the lesser included offenses and the affirmative defenses provided for those offenses. *See Santana v. State*, 714 S.W.2d 1, 10 (Tex. Crim. App. 1986).

An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

---

(3) except for the advantage of skill or luck, the risks of losing and the changes of winning were the same for all participants.

*Id.* § 47.04(b) (West 1994).

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

Tex. Code Crim. Proc. Ann. art. 37.09 (West 1981). We must then determine whether gambling and keeping a gambling place are lesser included offenses of gambling promotion.

The elements of gambling promotion are: (1) a person, (2) intentionally or knowingly, (3) operates or participates in the earnings of a gambling place. *See* Tex. Pen. Code Ann. § 47.03(a)(1) (West 1994).[7]

The elements of gambling are: (1) a person, (2) intentionally or knowingly, (3) plays and bets for money or other thing of value at any game played with dice. *See* Tex. Pen. Code Ann. § 47.02(a)(3) (West Supp. 2001).[8]

---

[7] **§ 47.03 Gambling Promotion**

(a) A person commits an offense if he intentionally or knowingly does any of the following acts:

(1) operates or participates in the earnings of a gambling place;

Tex. Pen. Code. Ann. § 47.03(a)(1) (West 1994).

[8] **§ 47.02 Gambling**

(a) A person commits an offense if he:

The elements of keeping a gambling place are: (1) a person, (2) knowingly, (3) uses a gambling place or permits another to use as a gambling place, (4) real estate, building, room, tent, vehicle, boat, or other property whatsoever, (5) owned by him or under his control or rents or lets such property with the intent that it be so used. *See* Tex. Pen. Code Ann. § 47.04(a) (West 1994).[9]

A violation of § 47.04 requires the additional element not required by § 47.03 that the person own, lease, or let the place where gambling occurs. A violation of § 47.02 requires the additional element not required by § 47.03 that the person himself play and bet for money or other thing of value at any game played with dice.

Because the offenses prohibited by Section 47.02 and 47.04 each provide for an additional element not required for the violation of Section 47.03, keeping a gambling place and gambling are not lesser included offenses of gambling promotion. The trial court did not err in refusing to allow defense counsel to voir dire the jury on the affirmative defenses provided for Sections 47.02 and 47.04. Appellant's second point of error is overruled.

---

(3)  plays and bets for money or other thing of value at any game played with cards, dice, balls, or any other gambling device.

Tex. Pen. Code Ann. § 47.02(a)(3) (West Supp. 2001).

[9]  **§ 47.04.  Keeping a Gambling Place**

(a)  A person commits an offense if he knowingly uses or permits another to use as a gambling place any real estate, building, room, tent, vehicle, boat, or other property whatsoever owned by him or under his control, or rents or lets any such property with a view or expectation that it be so used.

Tex. Pen. Code Ann. § 47.04(a) (West 1994).

**Excluded Testimony**

In his third point of error, appellant complains that the trial court erred in excluding testimony of Adam Morriss, a former county attorney, (in another county—not Tom Green county) concerning the affirmative defenses of keeping a gambling place provided in Section 47.04. Because the offenses prohibited by Sections 47.04 and 47.02 are not lesser included offenses of the offense prohibited by Section 47.03, the court did not err in disallowing the proffered testimony. Moreover, because the testimony offered concerned a pure question of law, the trial court did not err in disallowing the testimony.[10] *See Dickerson v. DeBarbieris*, 964 S.W.2d 680, 690 (Tex. App.—Houston [14th Dist.] 1989, no pet.); *Lyondell Petrochemical Co. v. Flour Daniel, Inc.*, 888 S.W.2d 547, 554 (Tex. App.—Houston [1st Dist.] 1994, writ denied). Appellant's third point of error is overruled.

**Juror Not Questioned**

In his fifth point of error, appellant insists that the trial court erred in denying his "request to question a juror who indicated that the fact he knew several witnesses was 'affecting' him as a juror." On the second day of trial, the trial court told counsel that the bailiff had informed the court that one of the jurors had told the bailiff that "he [the juror] knows the witnesses who have been present [sic] and that it is affecting him as a juror." Defense Counsel asked to have the juror

---

[10]    The witness was asked, "And what would your testimony be to what these affirmative defenses are?" The witness answered: "Well, the same as outlined in 47.04, subsection B, (1) the gambling occurred in a private place, (2) no person received any economic benefit other than personal winnings, and (3) except for the advantage of skill or luck, the risk of losing and the chances of winning are the same for all participants."

questioned. The trial court refused counsel's request. On appeal, appellant contends that "[a]ppellant's timely request to interrogate the juror to determine whether his knowledge of the State's witnesses was 'affecting him as a juror' called into question his ability to be fair and impartial . . . ." Appellant argues: "During voir dire, the prosecutor asked if anyone knew any State's witnesses. (5 RR at 16-18). While several panelists noted they knew some State's witnesses, none indicated their ability to be fair and impartial was affected by their knowledge. (5 RR at 17-23)." Appellant is mistaken. On the pages of the record indicated, the prospective jurors were not asked if they knew the witnesses who might testify. On the pages of the record indicated, the prospective jurors were asked whether they knew Jerry Dean Clements, Shannon Carpenter, or Robert Fairchild. These three individuals were alleged to have collaborated with appellant in committing the offense of gambling promotion, but none of these three individuals testified in the trial of these cases. Also, on the pages of the record designated, prospective jurors were asked by the prosecutor whether they knew attorneys Adam Morriss and Melvin Gray. Although Gray's name was mentioned during trial, he was not called as a witness and did not testify. Morriss did not testify before the jury; Morriss was called as a witness by defense counsel and testified out of the presence of the jury on a bill of exception for the defense.

We have examined the record made on jury voir dire and have been unable to find where either the prosecutors or defense counsel informed the prospective jurors who might be witnesses. The prospective jurors were never asked whether the witnesses who might testify would affect the juror's fairness and impartiality. Not having used diligence during voir dire to determine whether the witnesses expected to testify would cause any prospective juror to be prejudiced or

17

biased, appellant cannot now complain. *See Gonzales v. State*, 3 S.W.3d 915, 917 (Tex. Crim. App. 1999); *Armstrong v. State*, 897 S.W.2d 361, 363-64 (Tex. Crim. App. 1995).

The State, in its brief, argues that the juror who said he was "affected" by the witnesses who had testified was the same juror who had told the trial court after he had been selected as a juror that his service on the jury would interfere with his planned vacation. From our inspection of the record, we cannot determine whether this was true or not. Counsel has not designated where we can find, and we cannot find, the name or any identification of either the juror whose vacation plans would be interfered with or the juror who said he was "affected" by the witnesses who had testified.

It is also important to note that appellant did not file a motion for new trial and obtain a hearing in an attempt to complete the record on the issue he has now presented on appeal. A motion for new trial is not a requisite for raising a point on appeal; however, a motion for new trial is sometimes a necessary step to adduce facts of a matter not otherwise shown in the record. *See* Tex. R. App. P. 21.2; 43 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 41.01 (2d ed. 2001). This is especially necessary when there is a claim of jury misconduct. *See id.*; Tex. R. App. P. 21.3(g); *Armstrong*, 897 S.W.2d at 363. Because of the state of the record before us, we are unable to say that the trial court abused its discretion in refusing to allow defense counsel to interrogate the juror. Appellant's fifth point of error is overruled.

The judgments are affirmed.

_____

Carl E. F. Dally, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Dally[*]

Affirmed on Both Causes

Filed:   December 20, 2001

Publish

19

* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).