ACCEPTED
14-14-00402-CR
FOURTEENTH COURT OF APPEAL
HOUSTON, TEXAS
12/24/2014 9:36:23 AM
CHRISTOPHER PRIN
CLERK

# No. 14-14-00402-CR

In the
Court of Appeals
For the
Fourteenth District of Texas
At Houston

————————◆————————

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

12/24/2014 9:36:23 AM

CHRISTOPHER A. PRINE
Clerk

### No. 1900496

In the County Criminal Court at Law No. 15
Of Harris County, Texas

————————◆————————

# GREG SALDINGER

Appellant

V.

# THE STATE OF TEXAS

*Appellee*

————————◆————————

## STATE'S APPELLATE BRIEF

————————◆————————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**ERIC KUGLER**
Assistant District Attorney
Harris County, Texas
TBC No. 796910
kugler_eric@dao.hctx.net

**LAUREN MARFIN**
**RYAN MCLEARAN**
Assistant District Attorneys
Harris County, Texas

1201 Franklin, Suite 600
Houston, Texas 77002
Tel: (713) 755-5826
FAX: (713) 755-5809

*Counsel for Appellee*

ORAL ARGUMENT REQUESTED ONLY IF GRANTED TO APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 39, the State requests oral argument only if oral argument is granted to the appellant.

## IDENTIFICATION OF THE PARTIES

Counsel for the State:

**Devon Anderson** — District Attorney of Harris County

**Eric Kugler** — Assistant District Attorney on appeal

**Lauren Marfin; Ryan McLearan** — Assistant District Attorneys at trial

Appellant or criminal defendant:

**Greg Saldinger**

Counsel for Appellant:

**Jose Ceja** — Counsel on appeal

**Grant Scheiner** — Counsel at trial

Trial Judge:

**Hon. Jean Spradling Hughes; Hon. Jim Anderson** — Presiding Judges

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

IDENTIFICATION OF THE PARTIES ..................................................i

INDEX OF AUTHORITIES............................................................ iii

STATEMENT OF THE CASE...................................................1

STATEMENT OF FACTS ....................................................1

REPLY TO APPELLANT'S FIRST AND SECOND POINTS OF ERROR...........2

   A.   A prospective juror who is more likely to believe a police officer than another citizen is not challengeable for cause because such a position does not constitute an unequivocal belief that a police officer would never lie while testifying..........................................................................5

   B.   The appellant failed to preserve his second point of error for review by showing that the trial court prevented him from asking a particular proper question. .................................................................7

   C.   Even if the trial court erred in refusing to allow the appellant to voir dire on the issues of police credibility and proof beyond a reasonable doubt, the appellant was not harmed by the limitation because those subjects had already been thoroughly covered during the voir dire.......................................9

REPLY TO APPELLANT'S THIRD POINT OF ERROR ...................................13

   A.   The blood search warrant and supporting affidavit were admissible because the appellant made the existence of probable cause an issue before the jury......15

   B.   The appellant was not harmed by the admission of the blood search warrant and supporting affidavit because the same information was admitted elsewhere during the trial. ..............................................................17

CONCLUSION..........................................................20

CERTIFICATE OF SERVICE AND COMPLIANCE ...........................................21

# INDEX OF AUTHORITIES

## CASES

*Allridge v. State*,
762 S.W.2d 146 (Tex. Crim. App. 1988),
*cert. denied*, 489 U.S. 1040 (1989) ............................................................................8

*Anderson v. State,*
633 S.W.2d 851 (Tex. Crim. App. 1982)......................................................................5

*Annis v. State*,
578 S.W.2d 406 (Tex. Crim. App. 1979)................................................... 11, 18

*Barajas v. State*,
93 S.W.3d 36 (Tex. Crim. App. 2002) ........................................................................7

*Baxter v. State*,
66 S.W.3d 494 (Tex. App.—
Austin 2001, pet. ref'd) ............................................................................................16

*Brasher v. State*,
139 S.W.3d 369 (Tex. App.—
San Antonio 2004, pet. ref'd).....................................................................................7

*Briddle v. State,*
742 S.W.2d 379 (Tex. Crim. App. 1987)....................................................................6

*Cain v. State*,
947 S.W.2d 262 (Tex. Crim. App. 1997).....................................................................9

*Coffin v. State*,
885 S.W.2d 140 (Tex. Crim. App. 1994)...................................................................15

*Cotton v. State*,
686 S.W.2d 140 (Tex. Crim. App. 1985)................................................... 11, 17

*Dhillon v. State*,
138 S.W.3d 583 (Tex. App.—
Houston [14th Dist.] 2004, no pet.)..............................................................................9

*Easley v. State*,
424 S.W.3d 535 (Tex. Crim. App. 2014)....................................................................9

iii

*Faulder v. State*,
745 S.W.2d 327 (Tex. Crim. App. 1987),
*cert. denied*, 519 U.S. 995 (1996) ....................................................................8

*Foster v. State*,
779 S.W.2d 845 (Tex. Crim. App. 1989)...........................................................15

*Green v. State*,
934 S.W.2d 92 (Tex. Crim. App. 1996)............................................................15

*Guzman v. State*,
955 S.W.2d 85 (Tex. Crim. App. 1997)............................................................15

*Hernandez v. State,*
563 S.W.2d 947 (Tex. Crim. App. 1978)........................................................5, 7

*Johnson v. State,*
967 S.W.2d 410 (Tex. Crim. App. 1998)..................................................... 11, 17

*King v. State*,
953 S.W.2d 266 (Tex. Crim. App. 1997)..........................................................11

*Lacy v. State*,
424 S.W.2d 929 (Tex. Crim. App. 1967)..........................................................16

*Lane v. State*,
822 S.W.2d 35 (Tex. Crim. App. 1991)..........................................................5, 7

*Leal v. State*,
13-00-457-CR, 2001 WL 892834 (Tex. App.—
Corpus Christi July 5, 2001, no pet.) .................................................................6

*Loredo v. State*,
159 S.W.3d 920 (Tex. Crim. App. 2004)............................................................8

*Maxwell v. State*,
253 S.W.3d 309 (Tex. App.–
Fort Worth 2008, pet. ref'd) ................................................................... 12, 18

*Mohammed v. State*,
127 S.W.3d 163 (Tex. App.—
Houston [1st Dist.] 2003, pet. ref'd) .............................................................8, 9

*Montgomery v. State*,
810 S.W.2d 372 (Tex. Crim. App. 1990)..........................................................15

*Moody v. State,*
827 S.W.2d 875 (Tex. Crim. App. 1992)............................................................6

*Morales v. State*,
   32 S.W.3d 862 (Tex. Crim. App. 2000)....................................................12

*Morgan v. Illinois*,
   504 U.S. 719 (1992) ........................................................................7

*Motilla v. State*,
   78 S.W.3d 352 (Tex. Crim. App. 2002)............................................ 11, 17

*Nance v. State,*
   807 S.W.2d 855 (Tex. App.—
   Corpus Christi 1991, pet. ref'd) ............................................................6

*Pratt v. State*,
   748 S.W.2d 483 (Tex. App.—
   Houston [1st Dist.] 1988, pet. ref'd) ...................................................15

*Sells v. State*,
   121 S.W.3d 748 (Tex. Crim. App. 2003)................................................8

*State v. Ross*,
   32 S.W.3d 853 (Tex. Crim. App. 2000)................................................15

*Wainwright v. Witt,*
   469 U.S. 412 (1985) .........................................................................6

*Williams v. State,*
   773 S.W.2d 525 (Tex. Crim. App. 1988)................................................6


**STATUTES**

TEX. CODE CRIM. PROC. art. 35.16(a)(9) (West 2010)...............................5


**RULES**

TEX. R. APP. P. 33.1(a)(1)(A) ..............................................................8
TEX. R. APP. P. 39......................................................................... i
TEX. R. APP. P. 44.2(b) .....................................................................17
TEX. R. APP. PROC. 44.2(b) ...............................................................17

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

The appellant was charged with DWI committed on June 6, 2013 (CR – 6). He pled "not guilty" to the charge, and the case was tried to a jury (CR – 240). The jury found him guilty and assessed punishment at two years of probation on February 12, 2014 (CR – 240). The appellant filed notice of appeal on March 11, 2014, and the trial court certified that he had the right to appeal (CR – 247, 253).

## STATEMENT OF FACTS

On the night of June 6, 2013, Kenneth Troost with the Houston Police Department was on patrol when he saw the appellant drive through a stop sign without stopping at the intersection of Lake Hills Drive and Big Springs (RR. III – 27-29). Troost pulled the appellant over and observed that the appellant had a strong odor of an alcoholic beverage on his breath, slurred speech, and red and glassy eyes (RR. III – 32-33). There was an open bottle of wine in a cooler behind the driver's seat (RR. III – 44). Troost administered some field sobriety tests on the appellant and noted several signs of intoxication, and he believed that the appellant was intoxicated (RR. III – 34-42, 77, 112).

Officer Troost took the appellant down to the police station for further investigation, where he handed the appellant over to Officer Robert Klementich (RR. III – 45, 89-107). The appellant continued to demonstrate his intoxication to Klementich through his performance on the field sobriety tests (RR. III – 89-107, 153-154). Finally, Officer Joel Quezada stepped in to finish up the investigation (RR. III – 110-111).

The appellant refused Quezada's request to provide a specimen to determine whether there was alcohol in his body, so Quezada applied for and received a search warrant (RR. III – 109-110, 156-157). The appellant's blood was drawn pursuant to the warrant at 10:30 p.m. (RR. III – 161-163, 175-176). His blood alcohol level at that time was 0.191, which is more than twice the legal limit (RR. III – 244) (St. Ex. 14). A conservative estimation of his blood alcohol level at the time of the traffic stop would have been between a 0.20 and 0.22 (RR. III – 247-248).

## REPLY TO APPELLANT'S FIRST AND SECOND POINTS OF ERROR

In his first point of error, the appellant claims that the trial court erred in failing to strike for cause prospective jurors who stated that they were more likely to believe a police officer than another citizen. (App'nt Brf. 11-13). This point of

error lacks merit because the question did not require a strike for cause and because the appellant was not harmed by the trial court's refusal to strike those prospective jurors. His related second point of error complains that the trial court erred in restricting his examination of the prospective jurors regarding both the credibility of police officers and the concept of proof beyond a reasonable doubt. (App'nt Brf. 15-18). But this point fails because it was not preserved and any restriction was harmless.

During the court's voir dire of the jury, the judge talked extensively about the credibility of police officers and the concept of proof beyond a reasonable doubt (RR. II – 9-11, 18-20, 35-38). The prosecutor also addressed the second issue, and the appellant was able to observe the reactions of the prospective jurors during both of those voir dires (RR. II – 51-52, 62, 70-71). When the prosecutor attempted to conduct a poll at the end of voir dire, the trial court stated, "You've gone past your time. If you did that 15 minutes ago, I'm with you. If you're going to take that big, long poll, you're way late for that." (RR. II – 71-72). During the appellant's voir dire, he did address some specific factual scenarios that could amount to a reasonable doubt (RR. II – 88, 89).

At the end of the appellant's voir dire, he attempted to ask the prospective jurors one final question of whether they would be "more predisposed to believe a police officer or a person accused." (RR. II – 99). The trial court told the appellant

3

that "the State went over without their poll, so your poll is ending, and just close it. You're past your time, well past your time. I stopped the State, I'll be stopping you." (RR. II – 99-100). Nevertheless, the appellant asked the jurors, "How many people would be, without even knowing the background of the police officer, not knowing anything about him, before he even testifies, would be more likely to believe what a police officer says than what a citizen says?" (RR. II – 100). One of the prospective jurors noted that it was a loaded question, and the appellant conceded as much (RR. II – 101). Nevertheless, the appellant asked the jurors to say their numbers for the record, and thirteen jurors responded (RR. II – 101-102).

While the appellant noted that prospective juror number one "would be more apt to believe a police officer than an ordinary witness," he never asked to strike that prospective juror (RR. II – 108-109). Nevertheless, the trial court responded:

> You asked that and the jurors appropriately said it's a loaded question. Even the jury called you on it. I will not strike those jurors based on your question, which one do you take first. No matter what answer they give, they're automatically strikable. Pick one or the other. You have to pick one or the other in your question. It's the way you worded it. I would not strike jurors based on your wording of that question.

(RR. II – 108). The appellant asked for "additional time to question the panel on that topic," but the trial court denied the request (RR. II – 109). The appellant then moved "to strike all of those jurors who, by raising their hand and stating their numbers, committed that they are more apt to believe a police officer than a citizen

4

accused without knowing anything about the police officer's background or before he even testifies." (RR. II -109). The trial court denied that request (RR. II – 109). The appellant also requested additional peremptory strikes, which was denied (RR. II – 110-111). Finally, the appellant requested additional time to voir dire on "proof beyond a reasonable doubt," and the trial court denied that request (RR. II – 102).

### A. A prospective juror who is more likely to believe a police officer than another citizen is not challengeable for cause because such a position does not constitute an unequivocal belief that a police officer would never lie while testifying.

According to Article 35.16(a)(9) of the Code of Criminal Procedure, a juror may be excused for cause if "he has a bias or prejudice in favor of or against the defendant." TEX. CODE CRIM. PROC. art. 35.16(a)(9) (West 2010). The unequivocal belief by a venireman that a police officer would never lie while testifying has been found to constitute a bias against the defendant under Article 35.16(a)(9). *Lane v. State*, 822 S.W.2d 35, 44 (Tex. Crim. App. 1991); *Hernandez v. State,* 563 S.W.2d 947, 950 (Tex. Crim. App. 1978). Otherwise, the trial court has discretion to determine whether bias or prejudice actually exists to such a degree that a prospective juror is disqualified and that a challenge for cause should be sustained. *See Anderson v. State,* 633 S.W.2d 851, 854 (Tex. Crim. App. 1982);

*Leal v. State*, 13-00-457-CR, 2001 WL 892834, at \*1-2 (Tex. App.—Corpus Christi July 5, 2001, no pet.) (not designated for publication).

Bias is an inclination toward one side of an issue, rather than to the other, which leads to the natural inference that a juror will not act with impartiality. *Id.* at 853. A trial court's refusal to sustain a defendant's challenge for cause is reviewed in light of all the prospective juror's answers. *Williams v. State,* 773 S.W.2d 525, 537 (Tex. Crim. App. 1988); *Nance v. State,* 807 S.W.2d 855, 866 (Tex. App.—Corpus Christi 1991, pet. ref'd).

Prospective jurors should be excused for cause only if their views would prevent or substantially impair the performance of their duties as jurors. *Wainwright v. Witt,* 469 U.S. 412, 424 (1985); *Moody v. State,* 827 S.W.2d 875, 888 (Tex. Crim. App. 1992). In deciding the propriety of the trial court's ruling on challenges for cause during voir dire, this Court must keep in mind that the trial judge has had the opportunity to observe the tone of voice and demeanor of the prospective juror in determining the precise meaning intended, while appellate courts have only the cold record. *Briddle v. State,* 742 S.W.2d 379, 384 n. 1 (Tex. Crim. App. 1987).

In the present case, the prospective jurors merely affirmed that they would be "more likely to believe what a police officer says than what a citizen says." (RR. II – 100). Such is a perfectly rationale position based on the additional

6

training and screening that police officers must endure coupled with the additional professional sanctions faced by police officers for perjury. Moreover, such an answer is not equivalent to the unequivocal belief that a police officer would never lie while testifying. *Lane*, 822 S.W.2d at 44; *Hernandez,* 563 S.W.2d at 950. Therefore, the trial court did not abuse its discretion in denying the challenges for cause.

**B.      The appellant failed to preserve his second point of error for review by showing that the trial court prevented him from asking a particular proper question.**

Voir dire plays a critical function in assuring that a criminal defendant's constitutional right to an impartial jury will be honored. *Morgan v. Illinois*, 504 U.S. 719, 729 (1992). "[P]art of the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors." *Id*. Thus, counsel must be diligent in eliciting pertinent information from prospective jurors during voir dire in an effort to uncover potential prejudice or bias, and counsel has an obligation to ask questions calculated to bring out information that might indicate a juror's inability to be impartial. *Brasher v. State*, 139 S.W.3d 369, 373 (Tex. App.—San Antonio 2004, pet. ref'd).

Nevertheless, a trial court has broad discretion over the process of selecting a jury. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002); *Allridge v.*

*State*, 762 S.W.2d 146, 167 (Tex. Crim. App. 1988), *cert. denied*, 489 U.S. 1040 (1989). Without this discretion, voir dire could go on forever without reasonable limits. *Faulder v. State*, 745 S.W.2d 327, 334 (Tex. Crim. App. 1987), *cert. denied*, 519 U.S. 995 (1996).

In order to preserve his complaint for appellate review, an appellant must show that the trial court prevented him from asking particular proper questions. *Sells v. State*, 121 S.W.3d 748, 755–66 (Tex. Crim. App. 2003); *Mohammed v. State*, 127 S.W.3d 163, 170 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). That the trial court generally disapproved of an area of inquiry from which proper questions could have been formulated is not enough for an appellate court to determine error because the trial court might have allowed a proper question had it been submitted for the court's consideration. *Id*.; *see* TEX. R. APP. P. 33.1(a)(1)(A). To preserve error for review, an appellant must make the trial court aware of any objections or complaints at a time when there is an opportunity for the trial court to cure or respond to the complaints. *Loredo v. State*, 159 S.W.3d 920, 923 (Tex. Crim. App. 2004).

In the present case, the appellant told the trial court that he wanted "additional time to question the panel on that topic [of police credibility]" and on "proof beyond a reasonable doubt," but he did not inform the trial court of any specific questions that he wanted to ask (RR. II – 102, 109). Therefore, the

8

appellant failed to preserve his complaint for appellate review. *See Dhillon v. State*, 138 S.W.3d 583, 590 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Mohammed*, 127 S.W.3d at 170. His second point of error should be overruled.

**C. Even if the trial court erred in refusing to allow the appellant to voir dire on the issues of police credibility and proof beyond a reasonable doubt, the appellant was not harmed by the limitation because those subjects had already been thoroughly covered during the voir dire.**

The Court of Criminal Appeals has stated that, "except for certain federal constitutional errors labeled by the Supreme Court as 'structural,' no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis." *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997). In *Easley v. State*, 424 S.W.3d 535, 539 (Tex. Crim. App. 2014), the court of criminal appeals held that while there may be instances in which a judge's limitation on voir dire is "so substantial" as to rise to the level of a constitutional error, such instances are generally the exception rather than the rule. The *Easley* court affirmed the appellate court's application of the more lenient non-constitutional harm analysis under Rule 44.2(b) to the trial court's erroneous refusal to allow the defendant's counsel to void dire on comparative burdens of proof. *Id*. The high court agreed with the lower court's holding that the trial court's error did not rise to the level of a constitutional error

9

because defense counsel was not "foreclosed from explaining the concept of beyond a reasonable doubt and exploring the veniremembers' understanding and beliefs of reasonable doubt by other methods." *Id.* The correct inquiry to determine whether the error was of a constitutional nature, therefore, was not whether defense counsel was prevented from exercising his "preferred method" of questioning, but rather whether he was "precluded from discussing and explaining the beyond-a-reasonable-doubt standard." *See id.*, 424 S.W.3d at 542.

The appellant claims that he is entitled to the constitutional harm analysis because he was not allowed to address the topic of reasonable doubt "at all." (App'nt Brf. 18). The appellant, however, confuses a limitation based on time with a limitation based on content. According to the trial court, the appellant was treated the same as the State with regard to the time allowed for voir dire (RR. II – 99-100). It was the appellant's decision on how to allocate that time. The trial court never ruled that the topic of reasonable doubt was off-limits. In fact, the concept of reasonable doubt had already been explored by the trial court, the prosecutor, and the appellant himself (RR. II – 9-11, 18-20, 51-52, 62, 70-71, 88, 89). Therefore, even if there were error in this case, the appellant is entitled only to a non-constitutional harm analysis under Rule 44.2(b).

Rule 44.2(b) of the Texas Rules of Appellate Procedure provides that any non-constitutional "error, defect, irregularity, or variance that does not affect

substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). A substantial right is affected when an error has a substantial, injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If, on the record as a whole, it appears the error "did not influence the jury, or had but a slight effect," this Court must consider the error harmless and allow the conviction to stand. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

The weight of the evidence of the defendant's guilt is a relevant factor in conducting a harm analysis under Rule 44.2(b). *Motilla v. State*, 78 S.W.3d 352, 360 (Tex. Crim. App. 2002). In the present case, the evidence against the appellant was very strong. A credible police officer testified that the appellant drove through the stop sign without stopping, had a strong odor of an alcoholic beverage on his breath, had slurred speech, had glassy eyes, and had an open bottle of wine behind the driver's seat (RR. III – 27-29, 32-33, 44). *See Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (enumerating nonexclusive list of signs recognized as evidence of intoxication, including slurred speech, bloodshot eyes, odor of alcohol on the person, unsteady balance, and staggered gait). That officer believed that the appellant was intoxicated (RR. III – 44). *See Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979) (reasoning that an officer's testimony that a person was intoxicated provided sufficient evidence to establish the element of

intoxication). The appellant demonstrated several signs of intoxication and refused to provide a sample to determine his level of intoxication; nevertheless, the police were able to obtain a sample, which showed that he was well over the legal limit (RR. III – 34-42, 77, 89-110, 112, 153-157, 244-248) (St. Ex. 14). *See Maxwell v. State*, 253 S.W.3d 309, 318 (Tex. App.–Fort Worth 2008, pet. ref'd) ("when so reviewing the evidence, including the evidence of appellant's refusal to perform field sobriety tests, we conclude the evidence is also factually sufficient to support the jury's verdict.").

Another relevant factor in a harm analysis under Rule 44.2(b) is "the character of the alleged error and how it might be considered in connection with other evidence in the case." *Motilla*, 78 S.W.3d at 359 (quoting *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)). In the present case, as stated previously, the appellant had already touched on the meaning of beyond a reasonable doubt, at least as it applied to the accuracy of a blood test (RR. II – 88, 89). Furthermore, both the trial court and the prosecutor addressed the issue of reasonable doubt in more depth, and the appellant was able to observe the reactions and answers of the prospective jurors during those exchanges (RR. II – 9-11, 18-20, 51-52, 62, 70-71). Finally, the appellant's closing argument did not depend on the credibility of a police officer or proof beyond a reasonable doubt; rather, it seemed to be based on supposed outrage that police could obtain a search warrant

for blood and that the police crime lab could make a mistake in analyzing it (RR. III – 349-361).  Therefore, the appellant was not harmed by the trial court's alleged refusal to allow him to voir dire on the issues of police credibility and proof beyond a reasonable doubt.  His second point of error should be overruled and the conviction affirmed.


## **REPLY TO APPELLANT'S THIRD POINT OF ERROR**

In his third and final point of error, the appellant claims that the trial court erred in admitting the search warrant and affidavit over a hearsay objection. (App'nt Brf. 18-21).  This point lacks merit because the appellant made the existence of probable cause an issue before the jury.  Nevertheless, the appellant was not harmed by the admission of the blood search warrant and supporting affidavit because the same substantive information was admitted during the trial

During the appellant's opening statement, which was given prior to the State's first witness, the appellant repeatedly attacked the probable cause that was developed by the three police officers and had been used to secure the search warrant for the appellant's blood (RR. III – 11-21).  The appellant claimed during opening that he was "a 63-year-old male, 6-foot-3, tall, and skinny…sitting in a doctor's office…cardio stenosis…prostate cancer…didn't have a full night's sleep…played golf in the hot sun" all in an effort to show that his poor health

mistakenly led the police officers to believe that he was intoxicated (RR. III – 12, 14, 18, 19). He characterized his situation as being "arrested by the police, who *may have initially* thought that he was intoxicated, but he wasn't. He just flat out wasn't." (RR. III – 20) (emphasis added).

During the State's direct examination of Officer Quezada, the prosecutor offered the search warrant and supporting affidavit into evidence (RR. III – 157). The appellant objected to it as hearsay, but the trial court overruled the objection (RR. III – 157, 159) (St. Ex. 15).

Once again, during closing argument, the appellant continued to attack the probable cause used to secure the search warrant (RR. III – 349-361). The appellant specifically asked the jury, "If I run into the police, if there is a police encounter, will they take the time to really understand what is going on? I don't think they did that here. I don't think they even tried to do that." (RR. III – 350). He claimed that "If you're 65, it's pretty clear that they shouldn't ask you to do field sobriety tests at all. There are other things they can do….But with Mr. Saldinger they jumped the gun a little bit, and they took him to a police station." (RR. III – 351). Finally, the appellant concluded, "If there is a villa[i]n in this story, I think the villa[i]n is that we're such slaves to this system that we've set up where we go and get warrants and pull blood from people whether they like it or not." (RR. III – 360).

The trial court's ruling on the admissibility of evidence is subject to an abuse of discretion standard on appeal. *See Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994). An abuse of discretion occurs when the trial court acts without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). A reviewing court should not reverse a trial judge whose ruling was within the "zone of reasonable disagreement." *Green v. State*, 934 S.W.2d 92, 101 (Tex. Crim. App. 1996). The reviewing court must view the evidence in the light most favorable to the trial court's ruling, giving the trial court almost total deference on its findings of historical fact that find support in the record. *Guzman*, 955 S.W.2d at 89; *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When the trial court does not file findings of fact, this Court must assume that the trial court made implicit findings that support its ruling, so long as those implied findings are supported by the record. *Id.*

### A. The blood search warrant and supporting affidavit were admissible because the appellant made the existence of probable cause an issue before the jury.

A search warrant and supporting affidavit are hearsay and generally inadmissible. *See Foster v. State*, 779 S.W.2d 845, 857 (Tex. Crim. App. 1989); *Pratt v. State*, 748 S.W.2d 483, 484 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd). But there are exceptions in which search warrants or affidavits may be

admissible over a hearsay objection. *Baxter v. State*, 66 S.W.3d 494, 498 n.2 (Tex. App.—Austin 2001, pet. ref'd). For example, if a defendant makes probable cause an issue before a jury, hearsay evidence is admissible. *Id.* (citing *Lacy v. State*, 424 S.W.2d 929, 931 (Tex. Crim. App. 1967) ("An issue of probable cause for appellant's search without a warrant was made before the jury—which fact distinguishes the case from the above cases cited by appellant. Such testimony was therefore admissible on the issue of probable cause, although such issue was not submitted to the jury in the charge.")).

The appellant claims that "probable cause was never disputed." (App'nt Brf. 19). But he repeatedly made probable cause an issue before the jury by questioning whether the police officers were mistaken in their belief that the appellant was intoxicated (RR. III – 12, 14, 18, 19, 20). He confirmed his intentions behind such statements during closing argument when he claimed that the police "jumped the gun a little bit" when they took him down to the station (RR. III – 351). Thus, the appellant made the existence of probable cause an issue before the jury, and the trial court did not abuse its discretion in admitting the blood search warrant and its supporting affidavit. *See Baxter*, 66 S.W.3d at 498 n.2; *Lacy*, 424 S.W.2d at 931. The appellant's third point of error should be overruled.

**B. The appellant was not harmed by the admission of the blood search warrant and supporting affidavit because the same information was admitted elsewhere during the trial.**

Even if the trial court erred in admitting the blood search warrant and supporting affidavit into evidence, this Court must apply Rule 44.2(b) of the Texas Rules of Appellate Procedure and determine whether the admission of the evidence affected the appellant's substantial rights. TEX. R. APP. P. 44.2(b); TEX. R. EVID. 103(a).

As stated previously, Rule 44.2(b) of the Texas Rules of Appellate Procedure provides that any non-constitutional "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. PROC. 44.2(b). If, on the record as a whole, it appears the error "did not influence the jury, or had but a slight effect," this Court must consider the error harmless and allow the conviction to stand. *Johnson*, 967 S.W.2d at 417.

The weight of the evidence of the defendant's guilt is a relevant factor in conducting a harm analysis under Rule 44.2(b). *Motilla*, 78 S.W.3d at 360. And the evidence against the appellant was very strong. A credible police officer testified that the appellant drove through the stop sign without stopping, had a strong odor of an alcoholic beverage on his breath, had slurred speech, had glassy eyes, and had an open bottle of wine behind the driver's seat (RR. III – 27-29, 32-33, 44). *See Cotton*, 686 S.W.2d at 142 n.3. That officer believed that the

17

appellant was intoxicated (RR. III – 44). *See Annis*, 578 S.W.2d at 407. The appellant demonstrated several signs of intoxication and refused to provide a sample to determine his level of intoxication; nevertheless, the police were able to obtain a sample, which showed that he was well over the legal limit (RR. III – 34-42, 77, 89-110, 112, 153-157, 244-248) (St. Ex. 14). *See Maxwell*, 253 S.W.3d at 318. Thus, even without the warrant, the appellant's conviction was a certainty.

Another relevant factor in a harm analysis under Rule 44.2(b) is "the character of the alleged error and how it might be considered in connection with other evidence in the case." *Motilla*, 78 S.W.3d at 359. In the present case, the same information contained in the blood search warrant and supporting affidavit was admitted elsewhere during the trial. The search warrant itself simply commanded any peace officer to search the appellant's body for blood samples (St. Ex. 15). But Officer Quezada testified that Magistrate Nicholas ruled that there was enough probable cause for a search warrant (RR. III – 160).

The search warrant affidavit began by stating Quezada's qualifications, it then related the facts of the stop and the investigation that Quezada had learned by talking with Troost and Klementich, then it discussed the appellant's refusal to give a sample to Quezada, and it concluded with the appellant's identification (St. Ex. 15). But that same information was admitted without objection during the trial. Quezada testified extensively about his training, background, and

18

qualifications (RR. III – 147-149). Troost testified concerning his stop of the appellant and initial observations before handing the case over to Klementich, who also testified concerning his administration of the field sobriety tests (RR. III – 89-107). Finally, Quezada testified concerning the appellant's performance on some additional sobriety tests as well as the appellant's refusal to provide a sample as required by law (RR. III – 152-156).

The appellant claims that the facts in the search warrant affidavit "with respect to the officer's prior knowledge of the accuracy of blood testing appear nowhere else in the record." (App'nt Brf. 21). Those assertions by Officer Quezada were specifically that:

> I am familiar with the methods in the State of Texas used to obtain samples for alcohol impairment or impairment caused by the introduction of other substances into the body, that being breath, blood, or urine samples. I have found these forensic tests to be reliable in supporting my opinions and observations on consumed substances and levels of impairment.

(St. Ex. 15). While Quezada did not repeat that testimony on the witness stand at trial, the toxicology expert testified that the blood test results in the present case were "accurate and valid." (RR. III – 244, 308). Furthermore, Quezada testified that all of the information he had gathered during his investigation, including that received from officers Klementich and Troost, was included in the search warrant affidavit (RR. III – 175). Finally, neither of the parties referred to the search warrant as substantive evidence except when the appellant used it to impeach

19

Officer Qezada with inconsistencies between the affidavit, the offense report, and the testimony of other officers at trial (RR. III – 180-184). Therefore, the appellant was not harmed by the admission of the blood search warrant and the supporting affidavit. His third point of error should be overruled and the conviction affirmed.

## CONCLUSION

It is respectfully submitted that all things are regular and the conviction should be affirmed.

**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/ Eric Kugler
**ERIC KUGLER**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002-1923
(713) 755-5826
kugler_eric@dao.hctx.net
TBC No. 796910

## CERTIFICATE OF SERVICE AND COMPLIANCE

This is to certify that: (a) the word count function of the computer program used to prepare this document reports that there are 5,772 words in it; and (b) a copy of the foregoing instrument will be served by efile.txcourts.gov to:

Jose Ceja
Attorney at Law
2211 Norfolk #735
Houston, Texas  77098
Jose.Ceja@scheinerlaw.com

/s/  Eric Kugler
**ERIC KUGLER**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002-1923
(713) 755-5826
TBC No. 796910

Date:  December 24, 2014

21